UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DONTEE BROWN,

                Plaintiff,

    v.                                          Case No. 25-cv-1769-pp

JESSICA DOMINGEZ, *et al.*,

                Defendants.

---

## ORDER VACATING DISMISSAL OF CASE (DKT. NOS. 9, 10), REOPENING CASE, REINSTATING AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

---

Plaintiff Dontee Brown, who is incarcerated at Stanley Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging violations of his constitutional rights when he was confined at the Brown County Jail. On January 23, 2026, the court dismissed the case and entered judgment based on the plaintiff's failure to pay the initial partial filing fee. Dkt. Nos. 9, 10. The court subsequently granted in part the plaintiff's motion for extension of time and to reopen the case and ordered that it would reopen the case if the plaintiff paid the initial partial filing fee by March 20, 2026. Dkt. No. 12. The plaintiff timely paid that initial partial filing fee. This order vacates the court's order and judgment dismissing the case, reopens the case, reinstates and grants the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

1

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. <u>See</u> 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. <u>Id.</u>

On December 8, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $30.27. Dkt. No. 8. The court received that fee on March 19, 2026. When the court dismissed the case without prejudice, it denied as moot the plaintiff's motion for leave to proceed without prepaying the filing fee and ordered collection of the balance of the filing fee. Dkt. No. 9. The court will reinstate the plaintiff's motion for leave to proceed without prepaying the filing fee and grant the motion.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

3

stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      <u>The Plaintiff's Allegations</u>

The plaintiff was confined at the Brown County Jail during the events described in the complaint. Dkt. No. 1 at 1. He sues Jessica Domingez (APRN), Vital Core Health Strategies, Roger Haden, Wellpath Health Services, Heather Bruechert and Cherie Follet (LPN). <u>Id.</u>

The plaintiff alleges that he entered the Brown County Jail on December 22, 2022 with four gunshot wounds to his right upper leg area that he had sustained the previous night. <u>Id.</u> at 2. He states that he had doctor's orders that his wounds must be cleaned and dressed daily because they were still open and bleeding. <u>Id.</u> The last week of December 2022, "[d]efendants of the Brown County HSU department" allegedly stopped providing the plaintiff with daily cleaning and dressing changes. <u>Id.</u> at 2, 4. The plaintiff states that he filed medical requests and grievances about this. <u>Id.</u> at 4. He says that CO Bowden (not a defendant) told him that "at the direction of Defendant Domingez Defendant Follet informed him to inform [the plaintiff] that [he] would no longer be receiving daily cleaning & dressing changes even though [his] wounds were still open & bleeding an[d] instead told above pod officer that [the plaintiff] [was] to use band aids to dress [his] wound." <u>Id.</u> The plaintiff alleges that to prevent infection, he used industrial paper towels as makeshift gauze and band aids as tape to dress his open wounds. <u>Id.</u> He says that one of

4

the wounds became infected and he had to fight the infection with petroleum jelly and vigorous cleaning. Id.

During this time, Dominguez allegedly charged the plaintiff a $10 copay "for services he never received as well as follow up treatment that was basically the Defendants in Brown County HSU telling [him] that [he] would be put on the list to see the Doctor, which to date he has yet to be seen by." Id. The plaintiff asserts that he submitted requests and grievances, and that the defendants disregarded his physical health. Id. at 4, 6.

The plaintiff alleges that in February or March 2023, after his wounds were healed, he asked about physical therapy to help get mobility back in his right leg. Id. at 6. The defendants allegedly refused to address this issue. Id.

The plaintiff alleges that on February 8, 2023, he had extreme abdominal pain and was transported to the emergency room where he was diagnosed with Paget's disease, which he learned "was a type of bone disease." Id. When the plaintiff returned to jail, he allegedly submitted numerous requests to the HSU defendants to find out more information about his recent diagnosis and treatment for it. Id. The plaintiff alleges that they responded that for a $10 co-pay he could be seen but that they could not provide him with more information. Id. From March 2023 through May 2023, the plaintiff allegedly complained but continued to be denied treatment for his leg and Paget's diagnosis. Id.

The plaintiff asserts that in retaliation for his constant complaining, Dominguez directed the HSU defendants to charge his trust account for services

5

he never received. Id. He states that after almost a year of complaining about the denial of treatment, he received an assessment for physical therapy in October 2023. Id. After the assessment, the plaintiff allegedly was told that due to his injuries and the delay in receiving physical therapy, he has "foot drop" and nerve damage which requires him to permanently use a cane or walker. Id. The physical therapy allegedly was supposed to last from October 2023 through January 2024, but defendants Vital Core and the HSU defendants discontinued his treatment. Id.

The plaintiff alleges that in March 2025, he filed a grievance concerning his Paget's diagnosis. Id. The next month, Domingez saw the plaintiff and told him she was a doctor after the plaintiff asked to be seen by an "actual doctor." Id. Domingez allegedly never addressed a plan to treat, prevent or slow the progress of this disease. Id.

The plaintiff claims that the defendants violated his rights under federal and state law. Id. at 5. For relief, he seeks compensatory and punitive damages. Id.

C.     Analysis

The court assumes that the plaintiff was a pretrial detainee during the events described in the complaint because he was confined at the Brown County Jail. A §1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause. James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020) (citing Miranda v. C'nty of Lake, 900 F.3d 335, 346-47 (7th Cir. 2018)).

Claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. Id. (citing Miranda, 900 F.3d at 352). The plaintiff bears the burden to demonstrate objective unreasonableness, and he must make a two-part showing. Id. First, he must show that the defendants acted purposefully, knowingly or recklessly when considering the consequences of their response to the medical condition at issue in the case. Id. (citing McCann v. Ogle C'nty, Ill., 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. Id.

The plaintiff alleges that Domingez and Follet did not adequately treat his gunshot wounds which resulted in an infection in one of the wounds. He also alleges that the HSU defendants—presumably Domingez and Follet—denied his requests for physical therapy and when he was finally assessed for physical therapy about ten months after he entered the jail, he learned that because of the delay he has "foot drop" and nerve damage which requires him to permanently use a cane or walker. The plaintiff asserts that the HSU defendants denied him treatment for his leg and for his Paget's disease. The plaintiff may proceed on a medical care claim against Domingez and Follet in their individual capacities based on these allegations.

The plaintiff also alleges that Domingez retaliated against him for filing grievances about the lack of treatment by charging him for services he did not receive. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a

7

deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff may proceed on a retaliation claim against Domingez for allegedly charging him for services he did not receive in retaliation for filing grievances.

The plaintiff sues Roger Haden and Heather Bruechert, but the complaint does not contain any allegations against these defendants. Because the plaintiff does not allege that Haden or Bruechert was personally involved in the events described in the complaint, the court will dismiss them. See Rasho v. Elyea, 856 F.3d 469, 478 (7th Cir. 2017) (to hold an individual defendant liable under §1983 for violating incarcerated individual's constitutional rights, he must show that the defendant was personally responsible for the violation).

The plaintiff also does not state a claim against Vital Care Health Strategies or Wellpath Health Services. These entities cannot be held liable under 42 U.S.C. §1983 simply because they may employ the defendants. Rather, a private corporation may be liable under Monell v. Dep't of Soc. Servs., 436 U.S. 58 (1978), if a "municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)[.]" Thomas v. Martija, 991 F.3d 763, 773 (7th Cir. 2021) (quoting Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017)). The plaintiff has not alleged that Vital Care or Wellpath had such a policy, custom or practice. The court will dismiss them.

### III. Conclusion

The court **VACATES** its order and judgment dismissing the case without prejudice. Dkt. Nos. 9, 10. The court **DIRECTS** the clerk's office to **REOPEN** this case.

The court **REINSTATES** the plaintiff's motion for leave to proceed without prepaying the filing fee and **GRANTS** the motion. Dkt. No. 2.

The court **DISMISSES** defendants Vital Core Health Strategies, Roger Haden, Wellpath Health Services and Heather Bruechert.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Jessica Domingez and Cherie Follet under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Jessica Domingez and Cherie Follet to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 13th day of July, 2026.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**

11